# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 19-161 |
| NATALIE BARTON | SECTION I |

### ORDER & REASONS

Defendant Natalie Barton ("Barton") has been charged with conspiracy to distribute and possess with the intent to distribute anabolic steroids, conspiracy to misbrand drugs, multiple counts of distribution of anabolic steroids, and multiple counts of misbranding of prescription drugs.[1] Before the Court is Barton's motion[2] to dismiss counts one, three, four, and five of the indictment on void-for-vagueness and nondelegation grounds. For the following reasons, the motion is denied.

### I.

The seven-count indictment against Barton alleges that from sometime prior to December 18, 2014 until August 22, 2019, Barton and her late husband ("E.B.") marketed and sold anabolic steroids and prescription drugs online and in a physical store located in Metairie, Louisiana, and that they misbranded the drugs for sale, in violation of federal law.[3] Counts one, three, four, and five charge offenses involving

---

[1] *See* R. Doc. No. 1. The indictment against Barton also includes a forfeiture provision for any property constituting or derived from any proceeds obtained as a result of the charged offenses, as well as any property used or intended to be used to commit or facilitate the commission of said offenses. *Id.* at 12–13.
[2] R. Doc. No. 41.
[3] *See* R. Doc. No. 1.

anabolic steroids. Count one charges Barton with conspiracy to distribute and possess with the intent to distribute anabolic steroids, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(E)(i), and 846. Counts three, four, and five charge Barton with the distribution of anabolic steroids, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(E)(i), and 18 U.S.C. § 2.

Barton argues that these four counts should be dismissed on void-for-vagueness and nondelegation grounds. First, according to Barton, the federal statute prohibiting the distribution of anabolic steroids is unconstitutionally vague because it fails to provide an "ordinary person" with sufficient notice that certain unlisted substances may be considered to be unlawful anabolic steroids.[4] Next, Barton argues that the charges against her violate the nondelegation doctrine because the United States Attorney "both defined the law and prosecuted the case."[5] The Court will address each of Barton's arguments in turn.

## II.

Anabolic steroids were first defined and added to schedule III of the Controlled Substances Act ("CSA") by the Anabolic Steroids Control Act of 1990.[6] *See* Pub. L. No. 101-647, 104 Stat 4789. The Anabolic Steroid Control Act of 2004 ("ASCA") modified the definition of an anabolic steroid to mean "any drug or hormonal substance,

---

[4] R. Doc. No. 41-1, at 7.
[5] *Id*.
[6] The Anabolic Steroids Control Act of 1990 defined an "anabolic steroid" as ""any drug or hormonal substance, chemically and pharmacologically related to testosterone (other than estrogens, progestins, and corticosteroids) that promotes muscle growth" and included a list of twenty-eight chemical substances. Pub. L. No. 101-647, 104 Stat 4789.

2

chemically and pharmacologically related to testosterone (other than estrogens, progestins, corticosteroids, and dehydroepiandrosterone)," and included a non-exhaustive list of fifty-nine chemical substances. *See* 21 U.S.C. § 802(32)(A); PL 108–358, 118 Stat 1661. ASCA also authorized the United States Attorney General to schedule additional substances as anabolic steroids pursuant to his statutory authority. *See* 21 U.S.C. §§ 802(41)(A), 811(a)–(c); 21 C.F.R. § 1300.01.

In 2014, Congress enacted the Designer Anabolic Steroid Control Act ("DASCA"), which added additional substances to the list of anabolic steroids and included an "analogue provision" for substances that were not specifically listed.[7] This provision expanded the definition of an anabolic steroid by providing that drugs and hormonal substances not listed in 21 U.S.C. §§ 802(41)(i)–(lxxv) may be considered to be an anabolic steroid if:

(I)   the drug or substance has been created or manufactured with the intent of producing a drug or other substance that either—

   (aa)   promotes muscle growth; or

   (bb)   otherwise causes a pharmacological effect similar to that of testosterone; or

(II)   the drug or substance has been, or is intended to be, marketed or otherwise promoted in any manner suggesting that consuming it will promote muscle growth or any other pharmacological effect similar to that of testosterone.

21 U.S.C. § 802(41)(C)(i).

---

[7] As explained by one of its legislative sponsors, DASCA would "giv[e] the DEA the tools and authority to properly classify designer steroids as controlled substances and increase criminal penalties for importing, manufacturing, or distributing them under false labels." Designer Anabolic Steroid Control Act of 2014: Hearing on H.R. 4771, 113th Cong. H7459–07 (2014) (statement of Rep. Joseph R. Pitts).

## A.

Under the void-for-vagueness doctrine, a criminal law is unconstitutionally vague if it "wholly 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes seriously discriminatory enforcement.'" *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). "Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, [the United States Supreme Court] [has] recognized that the more important aspect of vagueness doctrine 'is not actual notice, but . . . the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)).

The Supreme Court has emphasized that courts, when responding to a vagueness challenge, should consider the "strong presumptive validity that attaches to an Act of Congress." *Skilling v. United States*, 561 U.S. 358, 403 (2010) (quoting *United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 32 (1963)). Thus, "the threshold for declaring a law void for vagueness is high." *Johnson*, 135 S. Ct. at 2576. "'[S]tatutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.'" *Id.* (quoting *Nat'l Dairy Prod. Corp.*, 372 U.S. at 32)).

In *McFadden v. United States*, the Supreme Court denied a vagueness challenge to 21 U.S.C. § 841(a)(1) as it applied to prosecutions for controlled substances defined under the Controlled Substance Analogue Enforcement Act of

4

1986 ("Analogue Act"), a provision of the CSA similar to DASCA as it pertains to Barton. 135 S. Ct. 2298 (2015). The Analogue Act instructed courts to treat a category of substances—known as "analogues"—whose chemical structures are "substantially similar" to those of a controlled substance in schedule I or schedule II as schedule I controlled substances for purposes of federal law. *See id*. at 2302; 21 U.S.C. §§ 802(32)(A), 813. The Supreme Court concluded that the scienter requirement of Section 841(a)(1), which requires that a defendant *knowingly* engaged in the prohibited act—that is, manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance—"'alleviate[d] vagueness concerns'" as applied to substances that were analogues under the Analogue Act. *Id*. at 2307 (quoting *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007)).

The Supreme Court held in *McFadden* that Section 841(a)(1)'s knowledge requirement could be established either by evidence that the defendant: (1) knew she possessed a controlled substance listed on the federal schedules, even if she did not know the identity of the substance she possessed; or (2) knew the identity of the substance she possessed, even if she did not know that the substance was listed on the federal schedules. *Id*. at 2304–05. This requirement "'narrow[s] the scope of the [its] [sic] prohibition[,] and limit[s] prosecutorial discretion.'" *Id*. (quoting *Gonzales*, 550 U.S. at 149) (alterations in original).

The Analogue Act examined in *McFadden* "defines a controlled substance analogue by its features, as a substance 'the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule

5

I or II'; 'which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than' the effect of a controlled substance in schedule I or II; or which is represented or intended to have that effect with respect to a particular person." *Id*. at 2305 (quoting 21 U.S.C. § 802(32)(A)). "A defendant who possesses a substance with knowledge of those features knows all of the facts that make [her] conduct illegal, just as a defendant who knows [s]he possesses [a specific substance] knows all of the facts that make [her] conduct illegal. A defendant need not know of the existence of the Analogue Act to know that [s]he was dealing with 'a controlled substance.'" *Id*.

Like the Analogue Act upheld in *McFadden*, DASCA also defines an unlisted anabolic steroid by its features, as a substance whose chemical structure is "substantially similar" to an anabolic steroid that is listed in 21 U.S.C. § 802(41)(A) and that was created or manufactured with the intent of producing a substance that "promotes muscle growth" or "otherwise causes a pharmacological effect similar to that of testosterone," or that was marketed or promoted in any manner suggesting that its consumption would have such effects. *See* 21 U.S.C. § 802(41)(C)(i). In a parallel vein, a defendant who possesses a substance with knowledge of its features as an anabolic steroid, or who knows she possesses an anabolic steroid, would thereby "know[] all of the facts that make [her] conduct illegal." *McFadden*, 135 S. Ct. at 2305.

Both the Analogue Act and DASCA use the identical definitional term "substantially similar," as well as a reference to the substance's effects, to proscribe

their respective category of controlled substances.[8] As the Fifth Circuit explained in *United States v. Granberry* when it denied a vagueness challenge to the Analogue Act:

> [The Analogue Act] provides adequate notice of what conduct is prohibited. The statute makes plain that drugs which have been chemically designed to be similar to controlled substances, but which are not themselves listed on the controlled substance schedules, will nonetheless be considered as schedule I substances if 1) they are substantially similar chemically to drugs that are on those schedules, 2) if they produce similar effects on the central nervous system as drugs that are on those schedules, or 3) are intended or represented to produce effects similar to those produced by drugs that are on those schedules. There is nothing vague about the statute.

916 F.2d 1008, 1010 (5th Cir. 1990); *see United States v. Palmer*, 917 F.3d 1035, 1038 (8th Cir. 2019) (holding that the Analogue Act is not unconstitutionally vague); *United States v. Klecker*, 348 F.3d 69, 72 (4th Cir. 2003) ("[C]ourts of appeals have unanimously rejected vagueness challenges to Analogue Act prosecutions.").

Barton attempts to distinguish the Analogue Act and DASCA by arguing that a controlled substance analogue and anabolic steroid analogue are "fundamentally different" because of their respective chemical formulations.[9] However, Barton has not explained how this alleged distinction or DASCA's definition of an anabolic steroid as "related to" testosterone renders the statute unconstitutionally vague.[10]

---

[8] *See United States v. Daniels*, 247 F.3d 598, 600 (5th Cir. 2001) (holding that the federal bankruptcy statute was not unconstitutionally vague because, inter alia, the statute "contains identical language" to the federal mail fraud statute the Fifth Circuit "previously sustained against a void-for-vagueness challenge") (citations omitted).
[9] *See* R. Doc. No. 41-1, at 9.
[10] Barton asserts, without citing any supporting authority, that "the use of 'related to' and 'substantially similar' in the same statutory scheme is vague and confusing

7

Furthermore, DASCA is not unconstitutionally vague as applied to Barton, as evidence in the record indicates that she knew that the substances she possessed and distributed were anabolic steroids, and that she knew she was engaging in illegal conduct.[11] *See United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.") (citing *Nat'l Dairy Prod. Corp.*, 372 U.S. at 32 (1963)). As stated previously, the government may establish the knowledge requirement under 21 U.S.C. § 841(a)(1) by demonstrating that the defendant knew she possessed a controlled substance or that

---

and results in void for vagueness." R. Doc. No. 46; *see* R. Doc. No. 41-1, at 10–13. Barton also alleges that the United States Attorney "drop[ed] the <u>relation</u> element from the definition" of an anabolic steroid and misled the grand jury. *See* R. Doc. No. 41-1, at 12. Notwithstanding the lack of evidence to support this contention, Barton appears to have misread the statute, as the term "related to" applies to the definition of an anabolic steroid, *see* 21 U.S.C. § 802(41)(A), and the term "substantially similar" applies to drug or hormonal substances that are not specifically listed in the CSA but that may nevertheless be considered to be an anabolic steroid because of similarities in their chemical structure to an anabolic steroid that is listed. *See* 21 U.S.C. 802(41)(C)(i). There is no evidence that the United States Attorney "eliminat[ed]" any phrase in DASCA or the CSA when charging Barton for her conduct with respect to anabolic steroids. Barton also contends that "there is no federal law that exempts an anabolic analogue from being listed and posted by Congress or the Attorney General." R. Doc. No. 41-1, at 13. However, 21 U.S.C. § 802(41)(C)(i) specifically provides that certain substances not listed in 21 U.S.C. § 802(41)(A) "shall be considered to be an anabolic steroid" if their chemical structures meet the statutory requirements. *See* 21 U.S.C. § 802(41)(C)(i).

[11] Section 841(a)(1)'s knowledge requirement may be established through direct or circumstantial evidence, the latter of which could include "a defendant's concealment of [her] activities, evasive behavior with respect to law enforcement, [and] knowledge that a particular substance produces [an effect] similar to that produced by controlled substances." *McFadden*, 135 S. Ct. at 2304 n.1. As discussed herein, such circumstantial evidence has been presented with respect to the charges against Barton.

she knew the identity of the substance she possessed. *See McFadden*, 550 U.S. at 2304–05. This requirement of scienter assuages concerns that a law is unconstitutionally vague. *See id.* at 2307.

Barton has admitted that she and E.B. sold "bodybuilding enhancements,"[12] and despite the government's warning to Barton and E.B. that it considered their drug sale activities to be unlawful, the sales persisted.[13] Moreover, the government has presented evidence that Barton's late husband E.B., with whom Barton has been charged with aiding and abetting, sent messages to potential customers identifying specific substances and informing them that the substances being sold were illegal.[14]

---

[12] R. Doc. No. 41-1, at 1.
[13] *See* R. Doc. No. 18, at 5. According to the government, the Drug Enforcement Agency (DEA) executed a search warrant on Barton and E.B.'s home and warehouse on June 21, 2016 and seized over 500 bottles of an anabolic steroid sold under the trade name "MIT-Oxime" and over 300 bottles of erectile dysfunction drugs. *Id*. The DEA also executed electronic search warrants on that date and found that between December 2014 and June 2016, Barton and E.B. had grossed over $570,000 from the sale of anabolic steroids to customers across the United States and internationally. *Id*. After the search warrants were executed, the United States Attorney's Office met with Barton and E.B. to inform them that they were the targets of a federal drug investigation and outlined some of the evidence the government had gathered against them. *Id*. The government also explained to Barton and E.B. the legal framework of DASCA. *Id*. According to the government, "[t]here would have been no doubt from any participant in that meeting that the government considered the defendant's activities to be illegal." *Id*. However, after the meeting, while Barton shut down two websites she had previously used to sell drugs, the DEA discovered that Barton continued to sell drugs on a new website. *See id*.
[14] In addition to the distribution of anabolic steroids, counts 3, 4, and 5 also charge Barton with aiding and abetting such distribution, in violation of 18 U.S.C. § 2. *See* R. Doc. No. 1, at 11. Under 18 U.S.C. § 2, "'those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime.'" *Rosemond v. United States*, 572 U.S. 65, 71 (2014). "The statute's purview is broad, 'comprehend[ing] all assistance rendered by words, acts, encouragement, support, or presence . . . even if that aid relates to only one (or some)

According to the government, E.B. chemically modified an "illegal steroid called dianabol" to create a new substance called "dianadrol," and then packaged it for sale with a label "to say not for injection and not for human use."[15] However, E.B. instructed a potential user that "for the first week you need to take it twice a week to get a lot in you [sic] blood and then go to once a week."[16] E.B. also explained that he labeled the products in this manner because "that is just the only way I can sell it wit [sic] out it be [sic] illegal."[17]

Barton does not allege that she did not know the identity of the substances she sold with her late husband or that she was unaware that her late husband chemically modified specific anabolic steroids listed on the federal schedules. Nor has she alleged that the government engaged in "arbitrary enforcement" under a "standardless" law. *See Johnson*, 135 S. Ct. at 2556. Moreover, based on evidence presented by the government, it appears that Barton and E.B. attempted to create a false display of legitimacy by labeling their products with provisos stating that they were only for "research purposes" and "not for human consumption," when in fact, the products were marketed to consumers as ingestible substances to promote muscle growth.[18]

---

of a crime's phases or elements.'" *United States v. De Nieto*, 922 F.3d 669, 677–78 (5th Cir. 2019) (quoting *Rosemond*, 572 U.S. at 73) (alterations in original).
[15] R. Doc. No. 1, at 4 ¶15. Dianabol, the brand name for methandienone, which is sold under the brand name "Dianabol," is listed as an anabolic steroid under 21 U.S.C. § 802(41)(A)(xxii).
[16] R. Doc. No. 1, at 4 ¶ 16.
[17] *Id.* at 4 ¶ 17.
[18] *Id.* at 4 ¶ 13. Furthermore, the investigation by the DEA found no evidence that Barton or E.B. sold any drugs or other substances to accredited research institutions or laboratories. *See* R. Doc. No. 18, at 5.

Indeed, Barton herself states that she and E.B. sold "dietary and nutritional supplements" and "bodybuilding enhancement products" at their store, which are items to be consumed.[19]

"A law can be unconstitutionally vague if it 'fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited.'" *Doe I v. Landry*, 909 F.3d 99, 116 (5th Cir. 2018) (quoting *Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 166 n.4 (5th Cir. 2009)). However, at this stage of the proceedings, the record before the Court indicates that Barton was aware that she and E.B. were engaging in prohibited conduct through the distribution of anabolic steroids and that she knew the identity of the substances she distributed.[20] Therefore, the Court finds that DASCA is not unconstitutionally vague as applied to Barton.

---

[19] R. Doc. No. 41-1, at 1.

[20] *See United States v. Gordon*, 580 F.2d 827, 841 (5th Cir. 1978) (finding, in the context of a nondelegation challenge, that the CSA contained "sufficient safeguards against arbitrary . . . action by the DEA," as the defendants did not allege they lacked notice of what conduct was unlawful); *United States v. Washam*, 312 F.3d 926, 930 (8th Cir. 2002) ("[T]he evidence in the present case shows that [the defendant] knew his conduct was illegal because even though the shipping label said not to ingest, [the defendant] told the buyers how much to ingest, he charged an exorbitant mark-up price on the chemical, and he commented about other chemicals that were legal for human consumption.").

To illustrate the apparent difficulty that an "ordinary person" would face in determining whether a particular substance is unlawful under DASCA, Barton includes a diagram of the chemical compositions of butylone and ethylone. *See* R. Doc. No. 41-1, at 11. However, neither of these substances is an anabolic steroid. Butylone is a schedule I controlled substance, and ethylone (also known as "Molly") is a positional isomer of butylone. *See* 21 C.F.R. §§ 1308.11(d)(62); 1308.11(b)–(h); *see also United States v. Phifer*, 909 F.3d 372, 385 (11th Cir. 2018) (remanding to the district court for the jury to determine whether ethylone "satisfie[d] all of the generally accepted definitions of a 'positional isomer' of butylone). The diagram is therefore inapposite to Barton's vagueness challenge to DASCA. Notwithstanding, whether the

## B.

The nondelegation doctrine, rooted in the principle of separation of powers, provides that "Congress may not constitutionally delegate its legislative power to another branch of Government." *Touby v. United States*, 500 U.S. 160, 165 (1991). However, Congress may "'obtain[] the assistance of its coordinate Branches'—and in particular, may confer substantial discretion on executive agencies to implement and enforce the laws." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)). "A statutory delegation is constitutional as long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *Id.* (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)).

The Supreme Court has held that the CSA provides an "intelligible principle" to constrain the Attorney General's discretion to schedule controlled substances and that "these restrictions satisfy the constitutional requirements of the nondelegation doctrine." *Touby*, 500 U.S. at 165–67;[21] *see United States v. Gordon*, 580 F.2d 827,

---

substances that Barton distributed were, in fact, anabolic steroids, is a determination for the jury to make.

[21] In *Touby*, the Supreme Court examined the delegation of authority to the Attorney General to schedule drugs on a temporary basis under 21 U.S.C. § 811(h), which the Supreme Court found "passes muster" under the nondelegation doctrine even though it "features fewer procedural requirements than the permanent scheduling statute." 500 U.S. at 166. The Attorney General's authority to permanently schedule anabolic steroids is provided for by the permanent scheduling statute, 21 U.S.C. § 811(a)–(c). *See* 21 U.S.C. § 802(41)(A). The Attorney General is also authorized to temporarily schedule anabolic steroids pursuant to 21 U.S.C. § 811(i).

840 (5th Cir. 1978) (concluding that the "delegation of the authority to schedule drugs [under the CSA] is constitutionally permissible"). Accordingly, the Supreme Court has also upheld the constitutionality of the Attorney General's delegation of "any of his functions under [the Controlled Substances Act] to any officer or employee of the Department of Justice." *Touby*, 500 U.S. at 169 (citing 21 U.S.C. § 871(a)).

Barton summarily asserts that the United States Attorney "implicated the nondelegation doctrine" and appears to argue that the United States Attorney is an improper delegee of the Attorney General's authority under 21 U.S.C. § 871(a).[22] Barton's contention is misplaced, as the United States Attorney does not, and did not in this case, exercise any delegated authority with respect to the scheduling of controlled substances. Furthermore, as the Fifth Circuit explained in *Granberry*, which examined a nondelegation challenge to the Analogue Act, a statute that provides that analogue substances shall be treated as controlled substances under the federal schedules "does not delegate any authority to the Attorney General," but rather, "operates only by reference to the authority *already* delegated to the Attorney General by the Controlled Substances Act itself." 916 F.2d at 1010. Similarly, DASCA does not delegate additional authority to the Attorney General or the United States Attorney, but rather, operates by reference to the Attorney General's previously-delegated authority under the CSA to schedule additional substances as anabolic steroids. *See* 21 U.S.C. §§ 802(41)(A), 811(a)–(c), 811(i). The United States Attorney,

---

[22] Barton's argument on this point is difficult for the Court to discern, as she questions what an "employee" means in the context of 21 U.S.C. § 871(a) but does not provide any additional reasoning. *See* R. Doc. No. 41-1, at 14.

accordingly, acted within his authority to charge Barton with the unlawful distribution of anabolic steroids based on the evidence obtained through the government's investigation.

### III.

Accordingly,

**IT IS ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana, November 21, 2019.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**