UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES | * | CRIMINAL ACTION NO. |
| | * | 19-00161 |
| VERSUS | * | |
| | * | SECTION: "I" |
| NATALIE BARTON | * | |
| | * | JUDGE LANCE M. AFRICK |
| ************************************ | * | |

## ORDER & REASONS

Before the Court is defendant Natalie Barton's ("Barton") latest Ex Parte Motion for Release from Pre-Trial Detention and for Miscellaneous Relief.  (Rec. Doc. 104).   Barton also requested an expedited hearing of the matter.   (Rec. Doc. 107). The Court granted the motion to expedite, set a briefing scheduling, and reserved a decision on whether to hold a hearing.  (Rec. Doc. 110).  For the following reasons, the Motion for Release and the request for a hearing are denied.

### BACKGROUND

The issue of whether Barton should be released pending trial has been addressed repeatedly.  For a detailed account of the procedural history and legal basis for prior denials of release, see District Judge Africk's recent and lengthy recitation found in his denial (Rec. Doc. 101) of Barton's Motion to Review Detention Hearing and Request for Evidentiary Hearing. (Rec. Doc. 85).  Since that ruling was issued one week ago, on April 16, 2020, Barton has filed this Ex Parte Motion for Release

1

from Pre-Trial Detention and for Miscellaneous Relief. (Rec. Doc. 104).[1] As grounds for the new motion, Barton notes that in his Order upholding the undersigned Magistrate Judge's pre-trial detention order, Judge Africk wrote:

> The Court is alert to the risk that COVID-19 presents to inmates, staff, and other individuals in federal correctional facilities. The government has informed the Court that Nelson Coleman Correctional Center ("NCCC") in St. Charles Parish, Louisiana, the facility where Barton is held, has implemented measures to address the COVID-19 outbreak, including restrictions on visits, suspension of the movement of inmates, and daily cleaning of the facilities. NCCC is also allegedly testing and isolating any inmate who exhibits COVID-19 symptoms, and it is screening all incoming arrestees to take their temperature, oxygen level, and pulse, as well as to determine their travel history and potential prior contact with any COVID-19-infected individuals.

(Rec. Doc. 101) (footnotes omitted).

Barton claims that things have since changed at NCCC. She claims that at present, the prison has ordered that she and all female federal prisoners are ordered into solitary confinement for 24 hours every other day. She argues that solitary confinement is a punishment that should not be applied to pretrial detainees like Barton who are presumed innocent under the law. She claims that at NCCC she is not allowed to have her prescribed behavioral medications or a follow-up medical visit regarding her cancer diagnosis. She claims an NCCC inmate was recently diagnosed with COVID-19 and removed to a hospital. She argues that "Under the

---

[1] On April 22, 2020, Barton also filed a Notice of Appeal to the United States Court of Appeals for the Fifth Circuit appealing the order of April 16, 2020, denying the Motion to Review the Magistrate's Pretrial Detention Order. (Rec. Doc. 111).

Bail Reform Law, a court must consider the least restrictive condition before ordering pre-trial detention. Under these circumstances, clearly the least restrictive condition is to order Natalie into home detention with the additional condition that she be monitored with an ankle bracelet." (Rec. Doc. 104-1, p. 2). Alternatively, Barton asks the Court to issue an order prohibiting her and other similarly situated pre-trial detainees from "being punished by being placed in solitary confinement." (Rec. Doc. 104-1, p. 3).

The government opposes on a number of bases. The government notes that on three occasions, two separate judges in this District have considered Barton's contention that she should not be detained pre-trial, and each time, those arguments have been rejected. It observes that Barton's short memorandum in support of her motion is totally devoid of any supporting authority and does not supply any supporting evidence for her factual claims, not even an affidavit from Barton.

The government also challenges Barton's factual assertions about "solitary confinement" based on discussions the government attorney had with the United States Marshals Service (USMS). The government claims that according to a representative of the USMS who is familiar with the conditions at NCCC as well as with Barton, the following has occurred.

- In preparation for potential COVID-19-related issues, NCCC created an isolated dorm within the facility to house inmates diagnosed with COVID-19.

- To date, no individuals are currently housed in the segregated dorm, although NCCC is creating the dorm preemptively should any positive COVID-19 cases arise.

- In order to facilitate creation of the isolation area, two female dorms had to be combined, and as a consequence, female detainees are limited to their cells on every other day. In other words, 50% of the female population at the facility are free to move around within the common areas on one day, and the other 50% are free to move in the common areas the next.

- To the extent Barton has a cellmate, they are not separated on the days that she is restricted to her cell.

- On all days, if Barton needs to leave her cell for medical treatment or other necessary reasons, she is permitted to do so.

(Rec. Doc. 112, p. 6)  The government argues that in no way do these measures constitute "solitary confinement."

The government also refutes whether there are inmates at NCCC that have been diagnosed with COVID-19; it claims that as of April 22, 2020, none have. The government relates that according to the USMS, four members of the staff tested positive for COVID-19, but they have been quarantined and did not have any contact with inmates after they were diagnosed. The government reports that USMS stated that a rumor has circulated within the NCCC detainee population that an inmate recently tested positive, but it is not correct. In any event, says the government, even were an inmate to be diagnosed with COVID-19, NCCC is taking precautions to mitigate risks to inmates, including, creating an isolation

4

dorm, and other measures set forth in the government's previous opposition.

The government's final factual challenge is to Barton's allegation that she has been denied medical treatment. It claims that Barton has been receiving medical treatment even while COVID-19 procedures have been put in place, that on April 6, 2020, she visited a mental health professional to receive her prescribed medications, and that she is scheduled to see an OB/GYN next month for a cancer evaluation.

The government further objects to Barton's motion observing that her memorandum fails to identify the applicable legal theory upon which she seeks relief. The government therefore construes Barton's motion as a motion pursuant to 18 U.S.C. § 3142(f), seeking to reopen her detention hearing, and argues that under that standard, Barton's motion should be denied because even if she had accurately characterized the current situation at NCCC, nothing she has raised warrants reconsideration of her detention because her allegations do not constitute a material change in circumstances relevant to the issues of her risk of flight or her dangerousness to the community.

## Law and Analysis

1. ***Legal Standard***

When a criminal defendant appears before a judicial officer, the judicial officer must order the "pretrial release" of the person, subject to certain conditions,

unless "the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). In determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of any other person in the community, the judicial officer considers the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person (including character, physical and mental condition, family ties, employment, financial resources, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and whether the person was on probation, parole, or other release pending trial, sentencing, appeal, or completion of sentence for a Federal, State, or local offense), and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id.* §3142(g).

Because Barton has failed to identify the legal basis for her latest motion, and because this Court has twice held lengthy detention hearings on Barton, the Court construes this motion as brought under 18 U.S.C. 3142(f), which provides that, after a detention hearing is held and a detention determination is made by the presiding judge, a hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material

bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). The defendant must be seeking to present "new" information. *See United States v. Stanford*, 367 F. App'x 507, 510 (5th Cir. 2010).

### 2. *Barton has not presented a material change in circumstances warranting her release.*

Under the standard set forth in 18 U.S.C. § 3142(f), Barton's motion must be denied. Even if Barton's contentions are accurate, they would not result in a different conclusion to the already decided question of whether there are conditions of release that will reasonably assure her appearance and the safety of any other person and the community.[2] There is, accordingly, no information with a material bearing on those questions and Barton's request to reopen the detention hearing must be denied.

As to Barton's additional COVID-19 related reasons she claims mitigate in favor of her release, as noted by Judge Africk in his April 16, 2020 order, NCCC "has implemented measures to address the COVID-19 outbreak, including restrictions on visits, suspension of the movement of inmates, and daily cleaning

---

[2] Most recently, Judge Africk denied Barton's motion to review the undersigned's detention order, finding "by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Barton's appearance at trial, and . . . by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. (Rec. Doc. 101, at 24).

of the facilities." (Rec. Doc. 101 at 23.) Moreover, the Court recognized the risk that "COVID-19 presents to inmates, staff, and other individuals in federal correctional facilities." *Id*. In light of these measures, and because she had "not provided any evidence that any potential health risks to Barton at NCCC outweigh the reasons cited for her detention," the Court denied her motion.

Barton's latest motion has presented nothing to cause the Court to reconsider its position. Indeed, if anything, it appears the NCCC is stepping up its measures designed to protect the inmates, such as Barton. Incredibly, she is complaining *about efforts to isolate her*. The undersigned, other judges in the Eastern District of Louisiana, and many courts around the country have denied defendants' requests to be released based on COVID-19 concerns, particularly where the defendant constitutes a risk of flight and/or a danger to the community. *See, e.g.*, *United States v. Lewis*, No. 19-cr-34, Rec. Doc. 150 (E.D. La. Mar. 19. 2020) (van Meerveld, M.J.); *see also United States v. Jarrin Gayden,* No. 18-cr-162, Rec. Doc. 86 (E.D. La. Apr. 3, 2020)(North, M.J.) (rejecting defendant's generic COVID-19 based arguments because defendant was a flight risk and danger to the community); *United States v. Johnson*, No. 16-cr-32, Rec. Doc. 410 (E.D. La. Apr. 21, 2020) (Ashe, J.) (rejecting defendant's COVID-19 based arguments because defendant was a flight risk and a danger to the community).

This Court has previously determined, *on three occasions now*, that Barton

constitutes both a risk of flight and a danger to the community. She has not overcome the statutory presumption in favor of detention in this case. Nothing she raised in the instant motion, even if true, constitutes a material change in circumstances warranting the relief she seeks—release, even if on home detention as she proposes. Title 18, United States Code, Section 3142(f) authorizes the Court to reopen the detention hearing, before or after a determination by a judicial officer, only where "the judicial officer finds that information exists that was not known to the movant at the time of the hearing **and that has a material bearing on the issue whether there are conditions of release that will assure the appearance of such person as required and the safety of any other person and the community."** (Emphasis added).

In his Order and Reasons, Judge Africk remarked that Barton has been indicted on charges under the CSA punishable by a maximum term of imprisonment of ten years. *See* 21 U.S.C. § 841(b)(1)(E)(i). Therefore, the rebuttable presumption under § 3142(e)(3)(A) applies. *See United States v. Zaccaria*, 347 F. App'x 984, 985 (5th Cir. 2009) (explaining that an offense provided for under § 841(b)(1)(E)(i) "qualifies as an offense punishable under the [CSA] by at least 10 years of imprisonment") (internal citation omitted). Barton bears the burden of producing evidence to rebut the presumption. *Rueben*, 974 F.2d at 586. Over eight detailed pages, the District Judge conducted an exhaustive

*de novo* review of the elements to be considered to determine if Barton had overcome the presumption of detention. (Rec. Doc. 101, pp. 14-22). The Court found that the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, the nature and seriousness of the danger to any person or the community, *all* mitigated in favor of detention. Id. Judge Africk found "by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Barton's appearance at trial, and it finds by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." *Id.* at p. 24. Nothing set forth in Barton's latest Motion changes that analysis in any way.

### 3. *Barton's request that she and other pretrial detainees not be placed in "solitary confinement" is denied.*

Barton alternatively requests that if she is not released, the "Court should issue an order prohibiting her and other similarly situated pre-trial detainees from being punished by being placed in solitary confinement." In the context of Barton's request to reopen her detention hearing, the Court is not in a position to modify jail conditions as to all pre-trial detainees. Moreover, as Judge Vitter recently wrote in *Baqer v. St. Tammany Parish Government*, a §1983 case in which the prisoners were complaining about the opposite of solitary confinement—alleged overcrowding in the jail cells:

The Supreme Court has long-held that, "Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'" The Supreme Court has also recognized, however, that although a prisoner's rights may be diminished by the needs and exigencies of the institutional environment, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country." The Supreme Court has further held that, "[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."

In evaluating the constitutionality of conditions or restrictions of pre-trial detention, the proper inquiry is whether the conditions amount to punishment of the detainee. The Supreme Court has held that a particular condition or restriction of pre-trial detention does not constitute "punishment" if it is reasonably related to a legitimate governmental objective. "Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." Additionally, "Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." Further, "the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences." "[S]uch judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimus* level of imposition on pretrial detainees." The Fifth Circuit has also recognized that, "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." The Fifth Circuit has instructed that, "The Supreme Court has made clear that the standards against which a court measures prison conditions are 'the evolving standards of decency that mark the progress of a maturing society' and not the

standards in effect during the time of the drafting of the Eighth Amendment."

Baqer v. St. Tammany Par. Gov't, No. CV 20-980-WBV-JCW, 2020 WL 1820040, at *8 (E.D. La. Apr. 11, 2020) (footnotes omitted).

The Court similarly declines at this time to issue any order to NCCC as to how it is managing the measures it is taking in light of the COVID-19 pandemic as to the population as a whole or as to Barton in particular. Even if it is true that Barton and others are placed in temporary, rotating "solitary confinement" as a pandemic isolating measure, the Court will not micromanage such initiatives.

## Conclusion

This Court has already concluded on three occasions that Barton is a flight risk and a danger to the community. Nothing presented in the latest motion alters that conclusion. Even if her unsupported factual allegations are true, they do not alter the Court's prior—and repeated--determinations that Barton must remain detained.

Accordingly,

**IT IS ORDERED** that Barton's motion and request for a hearing are **DENIED**.

**IT IS FURTHER ORDERED** that Barton shall remain detained in the custody of the United States Marshal.

New Orleans, Louisiana, this 24th day of April, 2020.

_____
Janis van Meerveld
United States Magistrate Judge