UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 19-161** |
| **NATALIE BARTON** | **SECTION I** |

**ORDER & REASONS**

Before the Court is defendant Natalie Barton's ("Barton") motion[1] to dismiss counts one, three, four, and five of the indictment.[2] For the following reasons, the motion is denied.

**I.**

On August 22, 2019, a federal grand jury returned a seven-count indictment against Barton alleging that Barton and her husband ("E.B.") marketed and sold anabolic steroids and prescription drugs online and in a physical store located in Metairie, Louisiana in violation of federal law.[3] Count one charges Barton with

---

[1] R. Doc. No 118.
[2] Barton's motion refers to the "DASCA counts." *See id.* At a June 3, 2020 teleconference, Barton's counsel stated that the motion pertains to counts one, three, four, and five, which charge offenses involving anabolic steroids. *See* R. Doc. No. 1, at 8–9, 11. The remaining counts of the indictment charge conspiracy to misbrand drugs in violation of 18 U.S.C. § 371 and misbranding of prescription drugs in violation of 21 U.S.C. §§ 331 and 333(a)(2), and 18 U.S.C. § 2. *See id.* at 9–10, 12.

Barton filed a previous motion to dismiss counts one, three, four, and five on void-for-vagueness and nondelegation grounds. R. Doc. No. 41. The Court denied that motion, as well as Barton's subsequent motion for reconsideration. R. Doc. Nos. 51 & 55. The Court also denied Barton's motion to dismiss counts two, six, and seven of the indictment. R. Doc. No. 105.

[3] R. Doc. No. 1. According to Barton, E.B. passed away on May 17, 2017. R. Doc. No. 85-1, at 4.

conspiracy to distribute and possess with the intent to distribute anabolic steroids, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(E)(i), and 846.[4] Counts three, four, and five charge Barton with distribution of anabolic steroids, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(E)(i), and 18 U.S.C. § 2.[5]

Barton asserts that counts one, three, four, and five should be dismissed "on the facial grounds" that they violate the First Amendment of the United States Constitution.[6] In the alternative, Barton asks the Court to dismiss those counts on the basis of vagueness.[7]

## II.

Pursuant to 21 U.S.C. § 841(a)(1) of the Controlled Substances Act ("CSA"), it is unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Anabolic steroids are schedule III controlled substances. 21 U.S.C. § 812(e) Schedule III.

Section 802(41)(A) defines an anabolic steroid as "any drug or hormonal substance, chemically and pharmacologically related to testosterone (other than

---

[4] *Id.* at 8–9.
[5] *Id.* at 11.
[6] R. Doc. No. 118-1, at 9.
[7] *Id.* Barton's motion presents no argument in support of the vagueness assertion. As the Court has previously discussed, DASCA is not unconstitutionally vague both facially and as-applied to Barton. *See* R. Doc. No. 51, at 4–11.

Barton also asks for alternative relief on the basis of "overbroadness." R. Doc. No. 118-1, at 9. As discussed herein, however, an overbreadth claim is encompassed within Barton's First Amendment facial challenge.

estrogens, progestins, corticosteroids, and dehydroepiandrosterone)," and includes a non-exhaustive list of substances. 21 U.S.C. § 802(41)(A)(i)–(lxxv). The United States Attorney General is statutorily authorized to schedule additional substances as anabolic steroids. *See* 21 U.S.C. §§ 802(41)(A); 811(a)–(c).

In 2014, Congress enacted the Designer Anabolic Steroid Control Act ("DASCA"), which added additional substances to the previous statutory list of anabolic steroids and included a provision for substances that were not specifically listed. This provision expanded the definition of an anabolic steroid by providing that drugs and hormonal substances not listed in 21 U.S.C. § 802(41)(A) may be considered to be an anabolic steroid if:

> (I) the drug or substance has been created or manufactured with the intent of producing a drug or other substance that either—
>
>> (aa) promotes muscle growth; or
>>
>> (bb) otherwise causes a pharmacological effect similar to that of testosterone; or
>
> (II) the drug or substance has been, or is intended to be, marketed or otherwise promoted in any manner suggesting that consuming it will promote muscle growth or any other pharmacological effect similar to that of testosterone.

21 U.S.C. § 802(41)(C)(i).

As one of its legislative sponsors explained, DASCA "end[s] a loophole that allows designer anabolic steroids to easily be found online, in gyms, and even in retail stores." Designer Anabolic Steroid Control Act of 2014: Hearing on H.R. 4771, 113th Cong. H7459–07 (2014) (statement of Rep. Joseph R. Pitts). The statute was introduced to "help protect consumers from these harmful products by giving the DEA

3

the tools and authority to properly classify designer steroids as controlled substances and increase criminal penalties for importing, manufacturing, or distributing them under false labels." *Id.*

### III.

### A.

Barton asserts that a prosecution under DASCA "facially violate[s]" the First Amendment.[8] "A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2449 (2015). "Facial challenges to the constitutionality of statutes should be granted 'sparingly and only as a last resort.'" *Serafine v. Branaman*, 810 F.3d 354, 365 (5th Cir. 2016) (quoting *Hersh v. United States ex rel. Mukasey*, 553 F.3d 743, 762 (5th Cir. 2008)).

The United States Supreme Court recognizes two types of facial challenges in the First Amendment context. *See United States v. Stevens*, 559 U.S. 460, 472–73 (2010). First, a party may succeed in a facial attack by establishing "that no set of circumstances exists under which [the statute] would be valid,' or that the statute lacks any 'plainly legitimate sweep.'" *Id.* at 472 (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987) and *Washington v. Glucksberg*, 521 U.S. 702, 740, n. 7 (1997) (Stevens, J., concurring in judgments)). Second, a statute may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 473 (quoting *Washington*

---

[8] *Id.*

4

*State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n. 6 (2008)); *Seals v. McBee*, 898 F.3d 587, 593 (5th Cir. 2018).

The first step in the overbreadth analysis is to construe the challenged statute to determine what the statute covers. *Serafine*, 810 F.3d at 365; *Stevens*, 559 U.S. at 474. "Only after that can [the court] decide whether its unconstitutional applications are substantial and render the law unconstitutional." *Seals*, 898 F.3d at 593.

The Supreme Court has held that when "'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). Furthermore:

> [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 377; *see Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 498 (1949) (rejecting the contention that "the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute").

## B.

Barton's First Amendment challenge centers on DASCA's alleged restriction on speech. According to Barton, "[t]he manufacturing and distribution of an anabolic steroid—whether listed or unlisted is not a crime standing alone," nor is "speech

5

promoting muscle growth."[9] Barton asserts that DASCA "requires the government to prosecute the speech itself as *actus reus*"[10] and that "without the prohibited speech, there would be no crime at all."[11]

Barton's arguments are unavailing. Notably, under the CSA, the manufacturing or distribution of an anabolic steroid *is* a crime. *See* 21 U.S.C. § 841(a)(1) ("[I]t shall be unlawful for any person knowingly or intentionally [] to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]"). As stated previously, anabolic steroids are schedule III controlled substances. 21 U.S.C. § 812(e) Schedule III. Section 802(41)(A) enumerates a non-exhaustive list of substances considered to be anabolic steroids and provides that additional substances may be scheduled.

Under DASCA, an unlisted substance that is "derived from, or has a chemical structure substantially similar to" a listed substance in 21 U.S.C. § 802(41)(A) may be considered to be an anabolic steroid if either of two criteria is met. 21 U.S.C. § 802(41)(C)(i). First, it is an anabolic steroid if it was "created or manufactured with the intent of producing a drug or other substance" that either "promotes muscle growth" or "otherwise causes a pharmacological effect similar to that of testosterone. 21 U.S.C. § 802(41)(C)(i)(I)(aa)–(bb). Second, a drug or substance is considered to be an anabolic steroid if it "has been, or is intended to be, marketed or otherwise

---

[9] *Id.* at 8.
[10] "The actus reus is the guilty act, a violation if done with mens rea, the guilty mind." *United States v. Anderson*, 932 F.3d 344, 351 n. 19 (5th Cir. 2019).
[11] R. Doc. No. 118-1, at 9.

promoted in any manner suggesting that consuming it will promote muscle growth or any other pharmacological effect similar to that of testosterone." 21 U.S.C. § 802(41)(C)(i)(II).

DASCA does not, as Barton alleges, make speech the "*actus reus*."[12] Instead, the statute simply identifies drugs or substances that may be considered to be anabolic steroids. While such identification may involve a speech element—i.e., that the drug or substance was "marketed or otherwise promoted in any manner" suggesting that its consumption will promote muscle growth or a pharmacological effect similar to that of testosterone—the drug or substance may also be considered to be an anabolic steroid independent of any speech by the defendant. DASCA is written in the disjunctive, providing that certain unlisted substances may also be anabolic steroids based on their chemical features and intended physiological effects on the human body. *See* 21 U.S.C. § 802(41)(C)(i)(II).[13]

---

[12] *Id.* at 8. *United States v. Caronia*, which Barton cites in support of her arguments, is inapposite. *See id.* at 8–9. *Caronia* involved a prosecution under the Food, Drug, and Cosmetic Act ("FDCA"), and the court found that the government improperly construed the statute's misbranding provisions to criminalize the simple promotion of a drug's off-label use by pharmaceutical manufacturers, which the statute does not expressly prohibit. 703 F.3d 149, 162 (2d Cir. 2012). The government's case at trial "left the jury to understand that Caronia's speech was itself the proscribed conduct." *Id.* at 161. The court concluded that the government "cannot prosecute pharmaceutical manufacturers and their representatives under the FDCA for speech promoting the lawful, off-label use of an FDA-approved drug." *Id.* at 169. Here, the government has not made any representation that Barton's alleged speech constitutes the proscribed conduct charged in counts one, three, four, and five.

[13] The Controlled Substance Analogue Enforcement Act ("Analogue Act") similarly defines a category of substances as "controlled substance analogues," which, if intended for human consumption, are schedule I controlled substances. 21 U.S.C. § 802(32)(A). As the Supreme Court explained in *McFadden v. United States*, "[t]he Analogue Act defines a controlled substance analogue by its features, as a substance

7

The government may prove that the substances alleged in counts one, three, four, and five were anabolic steroids under either 21 U.S.C. § 802(41)(C)(i)(I) *or* § 802(41)(C)(i)(II).[14] Count one charges that Barton engaged in a conspiracy to distribute and possess with the intent to distribute anabolic steroids as defined in 21 U.S.C. § 802(41)(C)(i), which encompasses both the non-speech and alleged speech features that make a drug or substance an anabolic steroid.[15] Significantly, the substantive crime charged in count one is a controlled substances conspiracy, which the Fifth Circuit has upheld against a First Amendment challenge. *See United States v. Cooper*, 606 F.2d 96, 98 (5th Cir. 1979) ("The controlled substances conspiracy statute does not place impermissible restrictions on First Amendment freedoms of

---

'the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II'; 'which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than' the effect of a controlled substance in schedule I or II; or which is represented or intended to have that effect with respect to a particular person." 135 S. Ct. 2298, 2305 (2015) (quoting 21 U.S.C. § 802(32)(A)).

The court in *United States v. Lane* rejected the defendant's First Amendment challenge to the Analogue Act and concluded that the government could prove that substance was a controlled substance analogue based on the substance's chemical structure and effects or, alternatively, that "the substance has a substantially similar chemical structure to a controlled substance and that the defendant represented that it has substantially similar effects to a controlled substance." No. CR-12-01419-PHX-DGC, 2013 WL 3199839, at *2 (D. Ariz. June 24, 2013). "[T]hat definitional section does not serve as the sole basis for criminal liability. The government must also prove significant non-speech conduct as required by 21 U.S.C. § 841(a)(1)." *Id.* The court concluded that "[t]he choice to define some of those substances by the representations made about them is an incidental restriction of expression that is no greater than necessary for the furtherance of the government's important interest of regulating dangerous substances." *Id.*

[14] The government has advised that at trial, it intends to prove "significant non-speech conduct" to support the charges in the indictment. R. Doc. No. 122, at 10.

[15] R. Doc. No. 1, at 8–9.

8

association and expression."). Counts three, four, and five of the indictment allege that Barton knowingly and intentionally distributed anabolic steroids, which may also be proven without implicating First Amendment concerns. *See McFadden*, 135 at 2304 ("The ordinary meaning of § 841(a)(1) thus requires a defendant to know only that the substance [s]he is dealing with is some unspecified substance listed on the federal drug schedules.").

Alternatively, even if DASCA imposed a restriction on speech, Barton has not demonstrated that it would be unconstitutional under the First Amendment. Barton has failed to show that there are no circumstances under which DASCA would be valid or that DASCA lacks any plainly legitimate sweep. *See Stevens*, 559 U.S. at 472. Considering the government's interest in controlling and preventing the abuse of anabolic steroids, Barton also has not explained how a substantial number of DASCA's applications would be unconstitutional in relation to this legitimate purpose. *See id.* at 473. Moreover, "[a]ny incidental restriction here on the freedoms of association and expression is [d]e minimis in view of the government's undoubted power to regulate traffic in illicit drugs." *Cooper*, 606 F.2d at 98. Therefore, Barton's First Amendment challenge fails.

## IV.

Accordingly,

**IT IS ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana, June 5, 2020.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**