UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA     CRIMINAL ACTION

VERSUS     No. 19-161

NATALIE BARTON     SECTION I

**ORDER & REASONS**

Before the Court is defendant Natalie Barton's ("Barton") objection[1] to the May 20, 2020 order by the U.S. Magistrate Judge denying Barton's motion[2] for discovery. Barton asks the Court to reverse the U.S. Magistrate Judge's order and require the government to provide the information Barton seeks.[3] For the following reasons, the U.S. Magistrate Judge's May 20, 2020 order is affirmed in all respects.

I.

On August 22, 2019, a federal grand jury returned a seven-count indictment against Barton alleging that Barton and her husband E.B. marketed and sold anabolic steroids and prescription drugs online and in a physical store located in Metairie, Louisiana in violation of federal law.[4] Count one charges conspiracy to distribute and possess with the intent to distribute anabolic steroids, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(E)(i), and 846.[5] Count two charges conspiracy to

---

[1] R. Doc. No 131.
[2] R. Doc. No. 98.
[3] R. Doc. No. 131-1, at 16.
[4] R. Doc. No. 1. According to Barton, E.B. passed away on May 17, 2017. R. Doc. No. 85-1, at 4.
[5] R. Doc. No. 1, at 8–9.

1

misbrand drugs in violation of 18 U.S.C. § 371.[6] Counts three, four, and five charge distribution of anabolic steroids, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(E)(i), and 18 U.S.C. § 2.[7] Counts six and seven charge misbranding of prescription drugs in violation of 21 U.S.C. §§ 331 and 333(a)(2), and 18 U.S.C. § 2.[8]

On March 26, 2020, Barton sent a discovery request to the government seeking information related to eight anabolic steroids allegedly sold by Barton.[9] For each substance, Barton requested: (1) "the exact date which the government concluded that it was an anabolic analogue"; (2) "the name and address of the government agency that made the conclusion"; (3) "the name and address of any government agency that disagreed with the conclusion"; and (4) "all written and email documents evidencing the [government's answers to (1), (2), and (3)]."[10] The government responded on April 1, 2020, informing Barton that certain information was protected by attorney work-product and deliberative process privileges, while other information regarding rulemaking or regulatory action taken by federal agencies, to the extent that such action existed, would be public information.[11]

On April 8, 2020, Barton filed a motion for discovery, repeating her requests for information relating to the eight substances.[12] According to the government, it

---

[6] *Id.* at 9–10.
[7] *Id.* at 11.
[8] *Id.* at 12.
[9] R. Doc. No. 98-1, at 1–2. The government explained that although Barton listed nine substances in her motion, 17α-methyl-17β-OH-1,4-androstadien-3-hydroxyimine was misidentified as two separate substances. R. Doc. No. 138, at 2 n.1.
[10] *Id.*
[11] *See* R. Doc. No. 98-1, at 3–4.
[12] R. Doc. No. 98.

subsequently conferred with Barton's counsel and reached an understanding that Barton was requesting control status memoranda from the Drug and Chemical Evaluation Section ("DOE") of the Drug Enforcement Agency with respect to the anabolic steroids allegedly sold by Barton, including the eight substances listed in her request and discovery motion.[13]

Notwithstanding the government's position that "documents in the possession of DOE were not discoverable because, *inter alia*, DOE is not part of the prosecution team," the government submitted a request to DOE for it to determine if it had any control status responses for fourteen anabolic steroids allegedly sold by Barton, including the eight substances that Barton previously identified.[14] According to the government, DOE conducted a search of its official recordkeeping system, computer drives, email accounts, and the archived emails of three members of the DOE who "would have served as the clearinghouse for any anabolic-steroid-related control status responses as well as the section's generic email account" from 2014 to the present.[15] DOE, according to the government, did not locate any control status responses pertaining to the fourteen substances.[16] The government provided information regarding its request to DOE and the results of the request to Barton's counsel on May 5, 2020.[17]

---

[13] R. Doc. No. 120, at 3.
[14] *Id.* at 4.
[15] R. Doc. No. 120-1, at 2.
[16] *Id.*
[17] *Id.* at 1–3.

The U.S. Magistrate Judge denied Barton's discovery motion on May 20, 2020.[18] The U.S. Magistrate Judge found that the government had conducted a "more than thorough search" in response to Barton's discovery requests, and it had "gone well beyond what it is required to do."[19] Based on its review of Barton's motion, the government's response, and the record, the U.S. Magistrate Judge concluded that the government had satisfied its discovery obligations under *Brady*, *Giglio*, and Rule 16 of the Federal Rules of Criminal Procedure.[20]

## II.

A U.S. Magistrate Judge may hear and determine "any matter that does not dispose of a charge or defense." Fed. R. Crim. P. 59(a); *see* 28 U.S.C. § 636(b)(1)(a). If a party timely objects to an order by a U.S. Magistrate Judge on a non-dispositive matter, the U.S. District Court must modify or set aside any part of the order that is "contrary to law or clearly erroneous."[21] Fed. R. Crim. P. 59(a). Under this deferential standard, the Court must affirm the decision by the U.S. Magistrate Judge "unless 'on the entire evidence [the Court] is left with a definite and firm conviction that a mistake has been committed.'" *Yelton v. PHI, Inc.*, 284 F.R.D. 374, 376 (E.D. La.

---

[18] R. Doc. No. 121.
[19] *Id.* at 3–4. The U.S. Magistrate Judge also observed that "[n]o party—not even the United States government—can provide information or produce materials that it does not have." *Id.*
[20] *Id.* at 4.
[21] The Court notes that Barton's objection to the U.S. Magistrate Judge's order is untimely, and that failure to object in accordance with Rule 59(a) of the Federal Rules of Criminal Procedure waives her right to review. *See* Fed. R. Crim. P. 59(a). Notwithstanding, the Court will consider the objection.

4

2012) (Barbier, J.) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Pursuant to Rule 16(a)(1) of the Federal Rules of Criminal Procedure, upon a defendant's request, the government must disclose certain information that is "within the government's possession, custody, or control." This information includes, *inter alia*, papers, documents, and data that are material to preparing the defense or that the government intends to use in its case-in-chief at trial, as well as the results or reports of any scientific test or experiment that the government knows—or through the exercise of due diligence could know—exists and that is material to preparing the defense or that the government intends to use in its case-in-chief at trial. Fed. R. Crim. P. 16(a)(1)(E), (F). Reports, memoranda, and other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case are specifically excluded from the government's discovery obligations under Rule 16. *See* Fed. R. Crim. P. 16(a)(2).

Under the *Brady* standard, the government must disclose evidence that is favorable to the defendant and material to her guilt or punishment. *United States v. Swenson*, 894 F.3d 677, 683 (5th Cir.), *cert. denied,* 139 S. Ct. 469 (2018); *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

### III.

Barton's objections to the U.S. Magistrate Judge's order do not support her argument that the order should be reversed. Instead, Barton simply repeats her request for the four items of information delineated in her discovery motion, though

5

she now requests such information for the fourteen anabolic steroids identified by the government.[22] Barton acknowledges that "much of what [she] [is] requesting" does not fall within the government's discovery obligations under Rule 16.[23] Nevertheless, she contends—without sufficient explanation—that such information is "significant" for a potential alibi defense, "misidentity" defense, and insanity defense.[24]

Barton's argument is unavailing. As the U.S. Magistrate Judge explained, discoverable materials are "those within the government's possession, custody, or control" and, as evidenced by the government's correspondence with Barton's counsel, much of the information that Barton requests simply falls outside that category—i.e., the government does not have it.[25] The Court has not been made aware of any reason to doubt the government's representation as to this issue. Furthermore, information contained in reports, memoranda, and other internal government documents made in connection with the investigation or prosecution of Barton's case is not subject to

---

[22] *See* R. Doc. No. 131-1, at 10–12. As a basis for the objection to the U.S. Magistrate Judge's order, Barton's counsel asserts that counsel "never mentioned 'DOE' or 'controlled status responses' in their discovery request to the government. R. Doc. No. 131-1, at 13. However, Barton's counsel acknowledged that they included a DOE control status memorandum from a different case as an exhibit to their discovery motion. *Id.* at 12; *see* R. Doc. No. 98-2, at 1; R. Doc. No. 98-3, at 3. The government requested information from DOE relating to each anabolic steroid that Barton allegedly sold, and Barton has not made any showing that the information she seeks has been improperly withheld. R. Doc. No. 138, at 5–6.
[23] R. Doc. No. 131-1, at 3.
[24] *Id.* at 4. Barton also mentions that certain dates she requested may be relevant for an *ex post facto* defense. *Id.* at 15. However, the anabolic steroid charges in the indictment only relate to alleged conduct that occurred after the enactment of the Designer Anabolic Steroid Control Act, the statute that criminalizes the substances Barton allegedly sold. *See* R. Doc. No. 1, at 2–3, 8–11.
[25] R. Doc. No. 121, at 2–3; R. Doc. No. 98-1, at 3–4; R. Doc. No. 138.

6

disclosure under Rule 16(a)(1). *See* Fed R. Crim. P. 16(b)(2). Accordingly, the Court finds that the U.S. Magistrate Judge's May 20, 2020 order is not contrary to law or clearly erroneous.

## IV.

For the foregoing reasons,

**IT IS ORDERED** that the U.S. Magistrate Judge's May 20, 2020 order is **AFFIRMED** in all respects.

New Orleans, Louisiana, June 25, 2020.

    _____
           LANCE M. AFRICK
    **UNITED STATES DISTRICT JUDGE**