UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 19-161 |
| NATALIE BARTON | SECTION I |

## ORDER & REASONS

Before the Court are defendant Natalie Barton's ("Barton") three remaining objections[1] to the presentence report,[2] as well as what the Court takes to be an objection to the supplemental report.[3] On November 18, 2020, Barton pleaded guilty to count one of a superseding Bill of Information.[4] Count one charged Barton with misbranding of prescription drugs, in violation of 21 U.S.C. §§ 331(k), 333(a)(2), and 18 U.S.C. § 2.[5]

After the final presentence report was issued,[6] probation issued a supplemental sentencing memorandum, offering sentencing guideline possibilities should the Court sustain Barton's remaining objections.[7] And, following an Order of this Court, the parties responded to that supplement.[8] While Barton's response is

---

[1] R. Doc. No. 199. Barton withdrew her fourth objection, which addressed calculation of her criminal history. *See* R. Doc. No. 211.
[2] Both Barton and the government have also moved for variances and/or departures—Barton downwards, and the government upwards. This opinion will not address those requests.
[3] R. Doc. No. 212, at 1.
[4] *See* R. Doc. No. 193 (rearraignment minute entry).
[5] R. Doc. No. 192 (Superseding Bill of Information).
[6] R. Doc. No. 202 (sealed).
[7] R. Doc. No. 207.
[8] R. Doc. No. 212 (Barton's response); R. Doc. No. 215 (the government's sealed response).

unclear, the Court interprets it to argue that the Court should not, as the supplemental report recommends, calculate her guidelines range based on § 2B1.1 (Theft, Property Destruction, and Fraud) but rather under § 2N2.1 (Violations of Statutes and Regulations Dealing With Any Food, Drug, Biological Product, Device, Cosmetic, Agricultural Product, or Consumer Product).

For the reasons that follow, the Court sustains (in substance, at least) Barton's first two objections to the final report and overrules her third. The Court also rejects the substance of her objection to the supplemental report, concluding that a cross-reference to the fraud guideline is appropriate.

### I. Objections to the Final Report

Barton's first two objections are interwoven. At bottom, they argue that the Court should not apply a cross-reference to sentencing guideline § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy), and the Court should not consider facts related to Barton's allegedly illegal distribution of anabolic steroids (hereinafter, Barton's "DASCA activity") in applying that guideline. Because the probation officer addressed the two objections in one response, and because the Court's disposition of the second renders the first irrelevant, it will address them simultaneously.

Barton's third objection relates to the final report's application of a four-level upward adjustment based on Barton's role in the offense, pursuant to § 3B1.1 (Aggravating Role). The Court will address that objection separately.

### a. Objections to the use of § 2D1.1 and consideration of certain facts thereunder.

For all of the briefing and novel arguments raised by both Barton and the government, the Court's resolution of the first two objections turns on a simple factual issue—though its effect on the guidelines calculation is a tougher nut to crack. United States Sentencing Guideline § 2N2.1(c)(2) provides that, if the offense of conviction "was committed in furtherance of, or to conceal, an offense covered by another offense guideline, apply that other offense guideline if the resulting offense level is greater than that determined above."

In the final report, the probation officer determined that, under that provision, a cross-reference to § 2D1.1 was appropriate, because Barton's "conduct in the instant offense, distributing a misbranded drug, was committed in furtherance of conspiring with others to distribute and possess with the intent to distribute anabolic steroids and distributing anabolic steroids, Schedule III controlled substances, which is covered" by § 2D1.1.[9]

In relevant part, Barton argues that this rationale "does not track the language of the statute, in that it does not state whether [Barton's] offense 'was committed in furtherance of, or to conceal' another offense."[10] Barton also points out that, significantly—and as the government acknowledges—her DASCA conduct ended

---

[9] R. Doc. No. 202, at 12 ¶ 50.
[10] R. Doc. No. 199, at 2.

3

months before the February 15, 2017 drug sale that is the basis of the charge in the Superseding Bill of Information.[11]

Probation rejected Barton's argument, reiterating its position that "[t]he defendant's conduct in the instant offense, *distributing a misbranded drug*, was committed in furtherance of conspiring with others to distribute and possess with the intent to distribute *anabolic steroids* and distributing *anabolic steroids*."[12] This, she concluded, rendered the cross reference appropriate.

The report's conclusion is, on the record presented to the Court, impossible to square with the sequence of events. This is so even if one accepts that, in the abstract, Barton's sales of misbranded drugs may have "furthered" her DASCA conduct. This sale of which Barton was convicted occurred months after her DASCA conduct had ceased. And, neither the government nor the report offers any plausible theory tying *this* sale to any DASCA conduct. And what would the connection be? The DASCA conduct had ceased, so the sale could not have furthered it by providing funds for it. And, even if it were true (as the government suggests),[13] that some users of the prescription drugs used them to "conceal" their anabolic steroid use, that argument seems beside the point in the context of this particular sale—which was made to the government.[14] The Court concludes, therefore, that the report's stated reasons for applying the cross-reference were insufficient.

---

[11] *Id.*
[12] R. Doc. No. 202, at 32 (emphasis added).
[13] R. Doc. No. 201, at 11.
[14] R. Doc. No. 194, at 3. The Court expresses no opinion as to whether a buyer's motives for making a purchase would suffice to trigger the cross-reference. Nor does

The government, though, offers what the Court construes as an alternative theory to support the cross-reference. In its response to Barton's initial objections, it argued that the cross-reference is appropriate because Barton's "prescription drug and anabolic steroid business complimented one another, and therefore, constituted 'relevant conduct.'"[15] The government also points out that the Fifth Circuit has stated "whether 'a cross-reference should be applied depends on whether the conduct to which the cross-reference refers is "relevant conduct."'"[16] The government draws the Court's attention to *United States v. Stanford*, a case in which the Fifth Circuit held that it was not plain error to apply the cross-reference from § 2N2.1 to § 2D1.1.[17] The government argues that *Stanford* stands for the proposition that "'the decision of a cross reference' in this context 'is made based on relevant conduct principles.'"[18] And, in an effort to address its timeline problem, the government explains that the gap between Barton's cessation of anabolic steroid sales and the particular sale of misbranded drugs to which she pleaded guilty is irrelevant because "[b]etween the effective date of DASCA and the date that she stopped selling anabolic steroids, [Barton] continuously and contemporaneously sold both prescription drugs and anabolic steroids through her websites and in her physical store."[19]

---

it conclude, as explained *infra*, that the government's position on this point is supported by a preponderance of the evidence.
[15] R. Doc. No. 201, at 11.
[16] *Id.* (quoting *United States v. Valenzuela-Contreras*, 340 Fed. App'x 230, 234 (5th Cir. 2009)).
[17] *Id.* at 10–11 (citing *United States v. Stanford*, 883 F.3d 500 (5th Cir. 2018)).
[18] *Id.* at 11 (quoting *Stanford*, 883 F.3d at 513).
[19] *Id.* at 12 n.5.

Tying everything together, the government argues that Barton's "prescription drug activities" and "anabolic steroid activities complemented each other."[20] This is so, it explains, because Barton "and her husband operated a business enterprise to market illegal products to bodybuilders and athletes seeking illegitimate pathways to enhance their performance, and the prescription drug and anabolic steroid products were both key components of a unified business plan."[21] It adds that, when the "DEA executed search warrants at [Barton's] warehouse, [it] seized both prescription drugs (such as tadalafil and sildenafil) and anabolic steroids."[22] "In other words," the government explains, Barton used "the same warehouse to distribute the two different types of products."[23] Similarly, the government claims "transaction records from [a storefront in Metairie operated by Barton] showed that [Barton] sold both prescription drug products and anabolic steroids at that location."[24]

The government also argues that the DASCA conduct and prescription drug sales complemented each other because "the products themselves were complimentary [sic]."[25] Citing a proposed government expert, the government notes

---

[20] *Id.* at 10. For reasons that do not bear addressing, neither the government nor Probation argues that the cross-reference should be applied and an enhancement under § 2D1.1 be given on the basis of Barton's earlier sales *of misbranded drugs*.
[21] *Id.* at 11.
[22] *Id.* (citing a paragraph in the draft presentence report to which Barton did not object).
[23] *Id.*
[24] *Id.* (citing paragraphs of the draft report to which Barton objected). Because the Court concludes the government has not carried its burden, it will not address Barton's objection to these paragraphs.
[25] *Id.*

that "Dr. Fedoruk concluded that the prescription medications sold by defendant either treated side effects from anabolic steroid usage or had other anabolic effects."[26]

As an initial matter, the Court finds the precise logic of the government's argument difficult to pin down. Is it that the DASCA conduct was "relevant conduct" to Barton's offense of conviction, and therefore that the guideline question is whether the anabolic steroid sales were committed in furtherance of themselves? Or is it that Barton's prior prescription drug sales were relevant conduct to the offense of conviction and, therefore, that *the prescription drug sales generally* were committed in furtherance of the DASCA conduct? The government does not say.

Regardless, the Court will assume *arguendo* that *Stanford* stands for the notion that relevant conduct principles might conceivably dictate the use of the cross-reference here. That does not matter, because the district judge in *Stanford* applied the cross-reference only after concluding that the relevant facts had been "established by a preponderance of the evidence." 883 F.3d at 511. The Court concludes that the government has not satisfied that standard here.

The government argues that the DASCA conduct and prescription drug sales were "key components" of a "unified business plan."[27] It claims that "the facts described in the [final report] demonstrate" this.[28] But it does not cite any portion of the report for this principle—and the Court cannot find one. What made them "key" to each other? And how "key" can they have really been if, as everyone acknowledges,

---

[26] *Id.*
[27] *Id.*
[28] *Id.*

7

the prescription drug sales continued well after the DASCA conduct ceased?  Or, conversely, if they really were "key" to each other, were the post-target meeting prescription drug sales (*i.e.*, the sales made after the DASCA conduct ceased) really part of the same course of conduct as the pre-target meeting sales?

It is true that the same warehouse and (*arguendo*) the same store were used to sell both types of products.  But the government explicitly acknowledges that "after the passage of DASCA,[29] the products were sold on different websites."[30]  The government offers the Court no reason to find the first of these facts more significant than the other.

The government's argument regarding the alleged complementary use of the prescription drugs and anabolic steroids is similarly deficient.  The government tells us that Barton's buyers used these two types of drugs in conjunction with each other.  Maybe so.  But the government does not cite the final report for this conclusion.  And though Dr. Fedoruk is mentioned in the factual basis Barton signed, this conclusion is not.[31]  In short, assuming such a causal connection could support a finding of

---

[29] The Court assumes *arguendo* that DASCA is constitutional and does not reach Barton's arguments on that point.  But it is undisputed that, prior to DASCA's passage, the DASCA conduct was lawful.

[30] *Id.*

[31] And while the original indictment mentions the potential use of albuterol and anastrozole (two other prescription drugs it charged Barton with selling) to mitigate side-effects of anabolic steroid use, it says nothing about the use of tadalafil and sildenafil citrate (the two prescription drugs Barton was convicted of selling).  Further, it offers no evidence that this is why Barton sold these drugs—or even why her buyers purchased them.

"relevant conduct," the government has not carried its burden regarding the underlying facts.

For these reasons, even if the use of the term "offense" in § 2N2.1(c)(2) includes "relevant conduct," the Court would still conclude that the government had not established the relevant facts by a preponderance of the evidence. It therefore concludes that the use of that provision to cross-reference § 2D1.1 is inappropriate and, in that manner, sustains Barton's first two objections.

### b. Objection to application of leadership adjustment under § 3B1.1

The Court overrules Barton's objection to the application of an upward adjustment under § 3B1.1 based on Barton's leadership role because it concludes that that the enterprise was "otherwise extensive."

#### *i. The enterprise was "otherwise extensive."*

United States Sentencing Guideline § 3B1.1(a) provides that, "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by [four] levels." The Court must make two separate findings to apply the aggravating role enhancement of § 3B1.1(a): first, that the scope of the criminal activity involved five or more participants or was otherwise extensive; and second, that the status of the defendant was that of an organizer or a leader of the criminal activity. "[T]he [g]overnment has the burden to prove, by a preponderance of the evidence, the facts which are necessary to support [an] enhancement[.]" *United States v. Olivares*, 833 F.3d 450, 452 (5th Cir. 2016) (per curiam).

9

The final pre-sentence report concluded that the upward adjustment was appropriate because Barton "and [her husband] were the true owners and operators of two organizations registered in the name of the defendant's mother . . . which were also used to facilitate the instant offense . . . . Thus, their participation in the offense was that of an organizer or leader in a criminal activity that involved five or more participants or was otherwise extensive, as described in [§ 3B1.1(a)]."[32]

Barton objected, arguing that "the PSR does not carry its burden to establish the application of" the adjustment because it does not identify five or more participants and does not explain Barton's role.[33] Probation rejected that argument, arguing that, in addition to Barton and her husband, evidence indicated that Barton's businesses "employed approximately 4 to 12 employees at various times."[34] The report rested primarily, however, on the "otherwise extensive" prong of the adjustment, concluding that "at a minimum, the offense is otherwise extensive."[35] It noted that Barton and her husband "owned and operated a number of Louisiana corporations . . . registered to either" Barton, her husband, or her mother.[36] The report also cited the numerous warehouses and websites the Bartons employed to conduct their business, as well as their use of a GoFundMe account to solicit donations which were, in fact, payments for purchases.[37]

---

[32] R. Doc. No. 202, at 13–14 ¶¶ 45–46.
[33] R. Doc. No. 199, at 2.
[34] R. Doc. No. 202, at 34.
[35] *Id.* at 33.
[36] *Id.*
[37] *Id.* at 33–34.

Responding to Barton's objection, the government noted correctly that "participants [need not] be identified by name, and even unknown individuals can be considered participants."[38] It also identified numerous employees who worked for Barton entities during the relevant period.[39] It did not, however, offer any argument that those individuals, known or unknown, were "criminally responsible," concluding for largely the same reasons employed by the probation officer that "even if the activity had not involved five or more participants, the enhancement would be appropriate here because [Barton's] activities were 'otherwise extensive.'"[40]

The Court cannot apply the adjustment on the basis of the existence of five or more participants. The government is correct that participants need not be identified. But, a participant, as defined in Application Note 1 of § 3B1.1, "is a person who is criminally responsible for the commission of the offense." The participants "need not have been convicted," *id.*, and the Fifth Circuit has held that to be considered a participant "[a]ll that is required is that the person participate knowingly in some part of the criminal enterprise." *United States v. McLaughlin*, 739 F. App'x 270, 278 (5th Cir. 2018) (quoting *United States v. Glinsey*, 209 F.3d 386, 396 (5th Cir. 2000)).

Under any standard, the record supports a conclusion that Barton and her husband "participate[d] knowingly" in the enterprise. *See id.* But the government

---

[38] R. Doc. 201, at 17 (citing *United States v. Lopez-Perez*, 623 F. App'x 223, 224 (5th Cir. 2015)).
[39] *Id.* at 18–19.
[40] *Id.* at 19.

11

offers no evidence that Barton's employees had any inkling that their conduct was unlawful—nor is there anything about their status as employees of companies used to mask the illegal nature of a public business that suggests such knowledge.

On the other hand, the Court has little difficulty concluding that the criminal activity was "otherwise extensive." "While the Fifth Circuit has not issued a clear definition of 'otherwise extensive,' it has generally upheld sentencing enhancements based on [§ 3B1.1(a)] when the scheme involves a large sum of money and the 'unknowing service' of several other individuals." *United States v. Woodward*, No. 09-638, 2011 WL 13182857, at *7 (S.D. Tex. Sept. 1, 2011).

"In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered." *Glinsey*, 209 F.3d at 396 (citing U.S.S.G. § 3B1.1, cmt. n.3). "Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." U.S.S.G. § 3B1.1, cmt. n.3; *see United States v. Lopez-Perez*, 623 F. App'x 223, 224 (5th Cir. 2015) (considering unknowing recipients of wire transfers involved in a criminal operation as part of the offense to find that the criminal activity was "otherwise extensive"); *United States v. Sidhu*, 130 F.3d 644, 654–55 (5th Cir. 1997) (holding that the criminal activity was "otherwise extensive" when the defendant recruited office employees to support his fraudulent practices, and his fraudulent scheme "could not have succeeded without the unwitting participation of his vulnerable patients and the unknowing assistance of employees in the many insurance companies that received [the defendant's] fraudulent billings").

12

Uncontested portions of the PSR indicate that Barton and her husband operated a number of Louisiana corporations through which they operated websites and a storefront, and that these were used to sell prescription drugs to facilitate the instant offense. They also support a finding that those corporations used employees (who, as far as the Court knows, were unaware of the criminal nature of the enterprise) to handle incoming bulk shipments and outgoing orders. Moreover, the PSR supports the existence of numerous unwitting participants as counterparties to these transactions. That is "otherwise extensive." *See United States v. Fullwood*, 342 F.3d 409, 415 (5th Cir. 2003) (reaching a similar conclusion regarding a scheme involving unsuspecting participants).

Similarly, the factual basis signed by Barton confirms her identity (alongside her husband) as the "true owner[] and operator[]" of this enterprise.[41] The Court has little difficulty concluding from the record that Barton was an "organizer or leader." Her objection to the upward adjustment is overruled.

## II. Objection to the Supplemental Report

The supplemental report suggests that, in the event Barton's objections to the final report are sustained,[42] the Court should apply United States Sentencing

---

[41] R. Doc. No. 194, at 1.

[42] The supplemental report envisioned a hypothetical in which the Court sustained all three of Barton's objections. However, the Court concludes that its decision to overrule the third objection does not impact the supplemental report (other than adding a four-level upward adjustment). Specifically, the Court concludes that its application of both the leadership adjustment under § 3B1.1(a) and the 'sophisticated means' adjustment under § 2B1.1(b)(10)(C) is not 'double counting,' as independent factors motivate the adjustments. Furthermore, "[d]ouble counting is prohibited only if the particular guidelines at issue specifically forbid it." *United States v. Johnson*,

13

Guideline § 2B1.1.[43] The government did not object, though it reiterated its position that the objections should be overruled.[44] Barton offers what the Court construes as an objection, conceding that "[t]he supplemental addendum's recalculation of the Guidelines range is correct[,]" but "maintain[ing] that no cross references apply and that the appropriate guideline is § 2N2.1."[45]

Guideline § 2N2.1(c)(1) states that, "[i]f the offense involved fraud, apply § 2B1.1." Barton acknowledges this but describes application of the cross reference as "permitted."[46] Noting that "the words 'fraud' [and] 'fraudulent' do not appear in the Superseding Information or in the Factual Basis,"[47] she argues that the her conduct, "at best" involved "false statements."[48] Describing false statements as "the *sine qua non* of misbranding," she concludes that interpreting this as fraud would result in "all misbranding cases" being calculated as fraud, "rendering the cross reference superfluous."[49] Barton's argument therefore appears to be that the Court should

---

990 F.3d 392, 403 (5th Cir. 2021) (quoting *United States v. Garcia-Gonzalez*, 714 F.3d 306, 316 (5th Cir. 2013)) (alteration omitted). And the guidelines in question do not.
[43] R. Doc. No. 207. The supplemental report suggests that this is an appropriate guideline for 21 U.S.C. § 333(a)(2) and "results in the greatest offense level." The Court concludes, as explained *infra*, that, even if this were not an appropriate reason to use that guideline, the cross-reference at § 2N2.1(c)(1) dictates the same result. The Court notes however, that the Fifth Circuit has previously affirmed the application of the fraud guideline rather than § 2N2.1 in similar circumstances. *See United States v. Arlen*, 947 F.2d 139, 146 (5th Cir. 2001).
[44] R. Doc. No. 215.
[45] R. Doc. No. 212, at 1.
[46] *Id.* at 2.
[47] *Id.* (citations omitted).
[48] *Id.*
[49] *Id.*

14

decline to apply the cross-reference because, while her conduct involved acts covered by the fraud guideline, applying it literally would cover too much conduct.

But, remarkably, Barton's original objection to the use of the *§ 2N2.1(c)(2)* guideline (which the Court has sustained) countenanced *just such a possibility*—arguing that broad coverage was the precise goal of the fraud cross-reference provision. Barton explained that "[i]f the Sentencing Commission had intended for [that] cross-reference to apply whenever a defendant's conduct broadly 'involved' acts covered by another guideline, it could have, and would have so stated. *It did just that in the preceding paragraph*[.]"[50] Having just argued that the Sentencing Commission intended for the fraud cross-reference to be applied broadly, Barton can hardly expect the Court to take seriously her request to give it a narrower construction.

Moreover, Barton's argument proceeds from an incorrect premise—that the Court has discretion to ignore the cross-reference when calculating her guideline range, even if it applies. The guideline does not use permissive language; it simply states that the Fraud guideline is to be applied "[i]f the offense involved fraud." § 2N2.1(c)(1). The Federal Sentencing Guidelines Handbook confirms that, "[i]f the offense involved fraud, the cross-reference . . . *requires* the court to apply the fraud guideline." Roger W. Haines, Jr., et al., *Federal Sentencing Guidelines Handbook* 1076 (2020 ed.).

Furthermore, Barton's argument would render "fraud" and "fraudulent" magic words. Why should that be? The Superseding Bill of Information makes clear that

---

[50] R. Doc. No. 199, at 2 (emphasis added).

Barton acted "with the intent to mislead,"[51] a requirement under 21 U.S.C. § 333(a)(2), which she acknowledges she violated. Barton mislabeled bottles and operated a GoFundMe purportedly for charitable donations that was actually used to accept credit card payments. Put another way, even if *some* misbranding cases might not rise to the level of fraud required to trigger the cross-reference, this one does. The use of the fraud guideline is appropriate.

### III. Barton's Offense Level Computation

For the reasons explained *infra*, the Court accepts the Supplemental Addendum's total offense level computation except that it adds a four-level adjustment under § 3B1.1. That yields an adjusted offense level of 16. As noted in the supplemental addendum, Barton is entitled to a two-level reduction for acceptance of responsibility under § 3E1.1(a). That yields a total offense level of 14 and, with it, a guideline range of 21 to 27 months. However, because Barton's adjusted offense total is 16 or greater, she is entitled to a further one-level reduction upon the government's motion pursuant to § 3E1.1(b). If the Court accepts such a motion, which it will, Barton's total offense level will be 13, her criminal history category will be III, and her guideline range 18 to 24 months.

Accordingly,

**IT IS ORDERED** that Barton's first two objections to the final report are **SUSTAINED**; her third objection to it is **OVERRULED**.

---

[51] R. Doc. No. 192.

**IT IS FURTHER ORDERED** that Barton's objection to the supplemental addendum to the final report is **OVERRULED**.

New Orleans, Louisiana, April 7, 2021.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**